IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARTHUR McELROY, | ) | 4:06CV3162 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| PATIENT SELECTION | ) | |
| COMMITTEE OF THE NEBRASKA | ) | |
| MEDICAL CENTER; JAMES H. | ) | |
| SORRELL; HOLLY SHOEMAKER; | ) | |
| and SUE MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Arthur McElroy, who appears pro se, is requesting the court to overturn a decision made by the Patient Selection Committee of the Nebraska Medical Center to refuse kidney transplantation services to McElroy because of his mental condition. This action is brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, against the Nebraska Medical Center (NMC) and two nurses employed by NMC who are members of the Patient Selection Committee, Holly Shoemaker and Sue Miller, and also against James H. Sorrell, M.D., who, while not employed by NMC, serves as a psychiatrist for the Committee. McElroy alleges that the defendants violated the ADA by administering a "fraudulent" psychiatric examination and rejecting his application for a kidney transplant based on protocols that discriminate against persons who are mentally ill.

The defendants have moved for summary judgment, claiming that the decision not to offer NMC's kidney transplantation services to McElroy was purely a medical decision that was based upon reasoned medical analysis and judgment, including an individualized inquiry into McElroy's condition. The individual defendants also claim that they are not subject to suit under Title III of the ADA. Upon careful consideration of the pleadings, affidavits, and briefs, the court concludes that the defendants' motions for summary judgment should be granted in all respects.

## *I. Factual Background*

Pursuant to our local rules, the defendants in their briefs have set forth statements of material facts with appropriate references to the pleadings and affidavits. *See* NECivR 56.1(a). Because McElroy has not controverted these statements,[1] they are deemed admitted. *See* NECivR 56.1(b)(1) ("Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.") (emphasis in original). Condensed, the material facts are as follows.

The Nebraska Medical Center is an entity that operates both University Hospital and Clarkson Hospital in Omaha, Nebraska. The Patient Selection Committee for Kidney and Pancreas Transplantation is part of the transplantation services offered by NMC. The Committee is comprised of surgeons, physicians, psychiatrists, nurses, social workers and other healthcare and wellness professionals who meet and confer to determine whether it is in each applicant's best interest to be placed on the kidney transplant list at NMC. The Committee is responsible for determining who will be offered the kidney transplantation services of NMC.

---

[1] McElroy has filed a "motion" to deny the defendants' motions for summary judgment, in which he contends that the pleadings show the existence of genuine issues of material fact. This opposing "motion" (filing 45) is not a proper filing under our local rules, *see* NECivR 7.1(b)(1)(A), but it will be treated as part of McElroy's accompanying brief (filing 46). It is McElroy's contention that a factual dispute must exist because the defendants have denied his conclusory allegations that they violated the ADA. There is no merit to this contention. Federal Rule of Civil Procedure 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). McElroy has failed to do this.

Holly Shoemaker works as a transplant coordinator for NMC, and Sue Miller works as a manager of the Kidney/Pancreas Transplant Office for NMC. Both are members of the Patient Selection Committee.

McElroy has been institutionalized at the Lincoln Regional Center since 1992. He applied for kidney transplantation services at NMC, and his application was discussed by the Patient Selection Committee on October 14, 2004, February 2, 2006, February 16, 2006, May 4, 2006, May 25, 2006, June 1, 2006 and June 8, 2006.

Miller attended all of these meetings except the meeting of February 2, 2006, and Shoemaker attending all but the meeting of February 16, 2006. Miller and Shoemaker both had several communications with McElroy regarding his application.

The Patient Selection Committee follows a specific set of protocols in determining whether an applicant should be offered NMC's kidney transplantation services. These protocols list a "history of psychiatric illness" as a relative contraindication for kidney transplantation services. A "major ongoing psychiatric illness" is listed as an absolute contraindication for kidney transplantation services.

The Patient Selection Committee considered McElroy's medical and psychiatric history, which included a diagnosis of delusional disorder, persecutory type with a previous diagnosis paranoid schizophrenia. As part of the selection process, the Committee asked Dr. James Sorrell, a psychiatrist, to evaluate McElroy.

On April 11, 2006, Dr. Sorrell performed a psychiatric evaluation of McElroy and received information regarding his condition from McElroy himself and from records provided by the Lincoln Regional Center. It is Dr. Sorrell's medical opinion that McElroy suffers from delusional disorder, persecutory type. Dr. Sorrell found, to a reasonable degree of medical certainty, that a kidney transplant for McElroy is absolutely contraindicated in light of his particular condition and would not be in McElroy's best interests or in the best interests of NMC or those who would be

treating McElroy. Dr. Sorrell also found that it would be a disservice to McEloy to offer him a kidney transplant. Dr Sorrell states that "[t]he procedure is complex and intrusive and requires long-standing adherence to immunosuppressive agents and cooperation with the various different people who treat a patient recovering from a kidney transplant. Adherence to immunosuppressive agents and cooperation with his medical team is highly doubtful in light of his history and his chronic psychotic illness for which he has yet to establish complete and autonomous control." (Filing 43, ¶ 12.)

Dr. Sorrell denies that he was asked to provide a "fraudulent" psychiatric evaluation, and states that his findings were based solely upon his education, training, and experience, and upon his examination of McElroy and McEloy's history. Dr. Sorrell denies that his findings were based upon any stereotypes of persons with mental illness.

Pursuant to the discussions of the Patient Selection Committee, the protocols followed by the Committee for selection of patients for kidney transplantation, and the medical opinions of Dr. Sorrell, the Committee came to the consensus that NMC could not ethically offer kidney transplantation services to McElroy, and that it would not be in McElroy's best interests to undergo the kidney transplantation process at NMC.

While Miller and Shoemaker are members of the Patient Selection Committee, neither has the power or authority on their own to accept McElroy for transplantation services at NMC, or to overturn or go against any decision made by the Committee regarding whether a particular applicant should be accepted for transplantation services. Neither has the power or authority to amend or enact policies or procedures of NMC as they relate to any standards or protocols for the acceptance or denial of candidates for transplantation services at NMC. Neither Miller nor Shoemaker owns, leases, leases to, or operates NMC or the Patient Selection Committee.

Dr. Sorrell is not an employee of NMC and he does not have the power or authority to accept McElroy for transplantation services at NMC or to overturn or go against any decision made by the Committee regarding whether a particular applicant should be accepted for transplantation services. Just like Miller and Shoemaker, Dr. Sorrell does not have the power or authority to amend or enact policies or procedures of NMC as they relate to any standards or protocols for the acceptance or denial of candidates for transplantation services at NMC. Similarly, he does not own, lease, lease to, or operate NMC or the Patient Selection Committee

## II. *Legal Analysis*

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

5

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. *Liability of Individual Defendants*

Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations by prohibiting any "person who owns, leases, or operates a place of public accommodation from discriminating against an individual on the basis of that individual's disability." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir.1999) (citing 42 U.S.C. § 12182(a)). "It is established case law in the Eighth Circuit that, in the absence of a claim that an individual owns, leases, or operates a place of public accommodation, 'there is no colorable claim under Title III of the ADA.'" *White v. Creighton University*, No. 8:06CV536, 2006 WL 3419782, *3 (D.Neb. Nov. 27, 2006) (quoting *Valder v. City of Grand Forks*, 217 F.R.D. 491, 494 (D.N.D. 2003)). McElroy's complaint thus fails to state a claim upon which relief can be granted against Miller, Shoemaker, or Sorrell. *See Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1036 (8th Cir.1998) ("[The claimant's] Title III claim against the St. Louis police officers . . . is even more obviously infirm, because there is not a colorable claim that the officers owned, leased, or operated the pizzeria in question. The claim therefore necessarily fails on its face.")).

Even if the complaint were to allege that the individual defendants "operate" NMC or the Patient Selection Committee, there is no evidence to support such a claim. Indeed, the evidence shows that the individual defendants have no authority to grant McElroy access to NMC's transplantation services or to overturn the decision that was made by the Patient Selection Committee. Miller, Shoemaker, and Sorrell are therefore entitled to the entry of summary judgment in their favor. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3rd Cir. 2002) (construing "operate" in accordance with its ordinary meaning, including "to control or direct the functioning of" and "to conduct the affairs of," and finding that college administrators did not individually "operate" the college).

### *B. Liability of the Nebraska Medical Center*

"A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir*, 184 F.3d at 1027 (citing 42 U.S.C. § 12182(a) and (b)(2)(A)(ii)). NMC focuses solely on the third factor, and argues that a medical decision cannot provide the basis for an ADA claim. The Eighth Circuit has so held. *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("Having conducted a de novo review of the record, . . . we agree with two other circuits that have recently concluded a lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions, *see, e.g., Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (Rehab Act, like ADA, was never intended to apply to decisions involving medical treatment); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under Rehab Act and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions).").

7

Because the evidence conclusively shows that McElroy's application for a kidney transplant was rejected by the Patient Selection Committee for legitimate medical reasons, he cannot maintain an action under the Americans with Disabilities Act. Summary judgment will therefore be entered in favor of NMC.

IT IS ORDERED that:

1. Defendants' motions for summary judgment (filings 39, 42) are granted, and Plaintiff's action is dismissed with prejudice.

2. The clerk of the court shall rename Plaintiff's "motion" to deny Defendants' motions for summary judgment (filing 45) as a "brief".

3. Final judgment shall be entered by separate document.

November 21, 2007.                    BY THE COURT:

                                      s/ *Richard G. Kopf*
                                      United States District Judge